## ** SECTION 362 INFORMATION SHEET **

Keith Wilson
DEBTORNV362#

Chapter 7
Case No.: 09-33096-bam

Wells Fargo Bank, N.A.
MOVANT
PROPERTY INVOLVED IN THIS MOTION: 355 Keating Street , Henderson NV 89074

NOTICE SERVED ON: Debtor(s) _____x_____; Debtor (s) Counsel _____x_____; Trustee _____x_____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st Wells Fargo Bank, N.A. $115,172.16 (PB) | 1st _____ |
| 2nd Wells Fargo Bank NV NA $99,887.00 (PB) | 2nd _____ |
| Total Encumbrances: $215,059.16 | Total Encumbrances: $_____ |
| APPRAISAL or OPINION as to VALUE: "Per attached Broker's Price Opinion $114,777.00 | APPRAISAL or OPINION as to VALUE: |
| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | OFFER OF "ADEQUATE |
| | PROTECTION" FOR MOVANT: |
| Amount of Note: $127,108.00 Interest Rate: 6.5 Duration: 30 Year Payment Per Month: $ 1,011.74 Date of Default: October 1, 2009 Amount of Arrearages: $5,090.32 SPECIAL CIRCUMSTANCES: I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action. | SPECIAL CIRCUMSTANCES: SUBMITTED BY: _____ |
| SUBMITTED BY: _____ SIGNATURE: _____ | SIGNATURE: _____ |

WILDE & ASSOCIATES
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
212 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
bk@wildelaw.com
Fax: 702 258-8787

MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

Wells Fargo Bank, N.A.
09-78144

Electronically Filed on _____

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In Re:

Keith James Wilson

                Debtor.

BK-S-09-33096-bam

Date: 2/9/2010
Time: 1:30 pm

Chapter 7

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Wells Fargo Bank, N.A., Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), alleges as follows:

1.      That on or about December 9, 2009, the above named Debtor filed this instant Chapter 7 Petition in Bankruptcy with the Court.

2.      Secured Creditor is the current payee of a promissory note dated December 20, 2002 in the principal sum of $127,108.00 ("Promissory Note" herein), secured by a Real Property Trust Deed

of same date ("Trust Deed" herein) upon property generally described as 355 Keating Street,

Henderson, NV 89074, and legally described as follows:

> LOT EIGHT 8 IN 8lOCK FIVE 5 OF GREEN VALLEY SOUTH UNIT NO. 422 AS SHOWN
> BY MAP THEREOF ON FILE IN 800K 35 OF PLATS, PAGE 93, IN THE OFFICE OF THE
> COUNTY RECORDER OF CALRK COUNTY, NEVADA

("subject property" herein).

Secured Creditor is informed and believes, and, based upon such information and belief, alleges

that title to the subject property is currently vested in the name of Debtor.

3.    With respect to secured Creditor's trust deed the following is due and owing:

| | |
|---|---|
| Unpaid Principal Balance | $115,172.16 |
| 1 Monthly Payment at $1,011.74 (October 1, 2009) | $1,011.74 |
| 1 Monthly Payment at $1,018.69 (November 1, 2009) | $1,018.69 |
| 2 Monthly Payments at $1,011.74 (December 1, 2009 - January 1, 2010) | $2,023.48 |
| 3 Late Charges at $40.47 (October 1, 2009 - December 1, 2009) | $121.41 |
| Property Inspections | $15.00 |
| Motion for Relief Filing Fee | $150.00 |
| Attorneys Fees | $750.00 |
| Total | $5,090.32 |

Furthermore, a payment becomes due on February 1, 2010 and on the first (1st) day of every month

thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the

date the monthly payment is due.

4.    Movant is informed and believes and therefore alleges that the Debtor and bankruptcy

estate have insufficient equity in the property.  The fair market value of the property pursuant to

Broker's Price Opinion is $114,777.00, less ten percent (10%) cost of marketing, less the first and

second secured liens resulting in insufficient equity.  Therefore, secured creditor is not adequately

protected.  A true and correct copy of the Broker's Price Opinion is attached hereto as Exhibit "A".

5.      Secured Creditor has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed; however Secured Creditor is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

6.      Secured Creditor has incurred to date attorney's fees of approximately $750.00.

7.      Secured Creditor urges that this Court issue and Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

8.      Secured Creditor's Information Sheet as to the extent of liens and encumbrances against the subject property is attached and incorporated herein by reference. Secured Creditor will seek leave of Court to specify any further encumbrances against the subject property at the time of hearing.

9.      Yvette Weinstein has been appointed by this Court the Chapter 7 Trustee in this instant Bankruptcy proceeding. By virtue of the position as Trustee of the estate of Debtor herein, Debtor holds title to the subject property in that capacity. To the extent the relief sought herein is granted, Respondent, Yvette Weinstein, Trustee, is bound any such judgment.

10.      This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section 362(d).

11.      Secured Creditor asserts that a foreclosure proceeding has not been initiated concerning the subject property. As a result, Secured Creditor asks the Court to waive the requirement of notifying other lienholders as detailed in Local Rule 4001 (a)(1). Such lienholders will be notified of a foreclosure proceeding if and when one is initiated.

WHEREFORE, Secured Creditor prays judgment as follows:

(1)      For an order granting relief from the Automatic Stay, and permitting this Secured Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to sell the subject property at a Foreclosure Sale under the items of said Trust Deed, including necessary action to obtain possession of the Property.

(2)      That a finding that Rule 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not applicable and Secured Creditor may immediately enforce and implement the order granting relief from the automatic stay.

(3)      In the alternative, an Order requiring the Debtor to reinstate and maintain all obligations due under all of the trust deeds encumbering the subject property and further allowing Secured Creditor with the remedies to proceed with foreclosure should the Debtor not maintain payments.

(4)      For attorneys' fees and costs of suit incurred herein.

(5)      For such other and further relief as this Court deems appropriate.

DATED this 6th day of January, 2010.

WILDE & ASSOCIATES

By:____/s/Gregory L. Wilde, Esq_____
GREGORY L. WILDE, ESQ.
Attorney for Secured Creditor
212 South Jones Boulevard
Las Vegas, Nevada 89107

Recording Requested By:
FIRST MAGNUS FINANCIAL CORP., dba CHARTER FUNDING

Assessor's Parcel Number:
178-07-217-015

Mail Tax Statements To:
FIRST MAGNUS FINANCIAL CORP., dba CHARTER
FUNDING WILLIAM CIRCLE, #2000
TUCSON, AZ 85711

LOAN NO.: 8405006159
ESCROW NO.: 02205302

MIN 100039284050061590
MERS Phone: 1-888-679-6377

―――――――――――――――――――[Space Above This Line For Recording Data]―――――――――――

State of Nevada

# DEED OF TRUST

| FHA Case No. |
| --- |
| 332-4052723-703 |

THIS DEED OF TRUST ("Security Instrument") is made on            DECEMBER 20, 2002
The Grantor is
KEITH J. WILSON, AN UNMARRIED MAN

("Borrower"). The trustee is
UNITED TITLE OF NEVADA

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

("Lender") is organized and existing under the laws of            ARIZONA            , and
has an address of
5285 EAST WILLIAMS CIRCLE, SUITE 2000, TUCSON, AZ 85711
Borrower owes Lender the principal sum of
ONE HUNDRED TWENTY SEVEN THOUSAND ONE HUNDRED EIGHT AND NO/100 X X X X X X X X X X X X

Dollars (U.S. $            127,108.00            ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on    JANUARY 01, 2033
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

Initials: _____
Amended 2/98

of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in                                           CLARK                                           County, Nevada:

LOT EIGHT 8 IN BLOCK FIVE 5 OF GREEN VALLEY SOUTH UNIT NO. 422 AS SHOWN BY MAP THEREOF ON FILE IN BOOK 35 OF PLATS, PAGE 93, IN THE OFFICE OF THE COUNTY RECORDER OF CALRK COUNTY, NEVADA.

PARCEL NO.:   178-07-217-015

which has the address of                          355 KEATING STREET                          [Street]
                    HENDERSON                    [City], Nevada     89074     [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

VMP-4N(NV) (0107)                          Page 2 of 8                          Initials: ___

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or


.00593

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's selection to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $          .

22. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Growing Equity Rider
☐ Graduated Payment Rider  [XX] Planned Unit Development Rider  ☐ Rehabilitation Loan Rider
☐ Other(s) [specify]

Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____
-Witness

_____
-Witness

_____(Seal)          _____(Seal)
KEITH J. WILSON                 -Borrower                                                    -Borrower

_____(Seal)          _____(Seal)
                                -Borrower                                                    -Borrower

_____(Seal)          _____(Seal)
                                -Borrower                                                    -Borrower

_____(Seal)          _____(Seal)
                                -Borrower                                                    -Borrower

STATE OF   NEVADA
COUNTY OF  CLARK

This instrument was acknowledged before me on    12|20|02                                    by
KEITH J. WILSON

My Commission Expires:   9-17-06           _____

KIM FREUND
Notary Public, State of Nevada
Appointment No. 97-2731-1
My Appt. Expires Sept. 17, 2006

VMP-4N(NV) (0107)                                        Page 8 of 8

# PLANNED UNIT DEVELOPMENT RIDER

LOAN NO.:  8405006159

MIN 100039284050061590
MERS Phone: 1-888-679-6377

| FHA Case No. |
| --- |
| 332-4052723-703 |

THIS PLANNED UNIT DEVELOPMENT RIDER is made this           20th      day of
DECEMBER, 2002                                , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of
the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

355 KEATING STREET, HENDERSON, NV  89074

[Property Address]

The  Property  Address  is  a  part  of  a  planned  unit  development  ("PUD")  known  as

GREEN VALLEY SOUTH

[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and
facilities), acting as trustee for the homeowners, maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD,
including all improvements now existing or hereafter erected on the mortgaged premises,
and such policy is satisfactory to Lender and provides insurance coverage in the amounts,
for the periods, and against the hazards Lender requires, including fire and other hazards
included within the term "extended coverage," and loss by flood, to the extent required by
the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security
Instrument for the monthly payment to Lender of one-twelfth of the yearly premium
installments for hazard insurance on the Property, and (ii) Borrower's obligation under
Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the
Property is deemed satisfied to the extent that the required coverage is provided by the
Owners Association policy. Borrower shall give Lender prompt notice of any lapse in
required hazard insurance coverage and of any loss occurring from a hazard. In the event

Initials:

10/95

FHA Multistate PUD Rider - 10/95
VMP-589U (9705)

Page 1 of 2            LENDER SUPPORT SYSTEMS INC. FHAPUDXX.FHA (7/97)

of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)        _____ (Seal)
KEITH J. WILSON                        -Borrower                                            -Borrower


_____ (Seal)        _____ (Seal)
                                       -Borrower                                            -Borrower


VMP-589U (9705)                        Page 2 of 2

CLARK COUNTY, NEVADA
FRANCES DEANE, RECORDER
RECORDED AT REQUEST OF: UNITED TITLE OF NEVADA
01-06-2003    09:27    STX    PAGE COUNT:    10
OFFICIAL RECORDS
BOOK/INSTR:20030106-C0593          FEE:    23.00
                                   RPTT:    .00

MIN 100039284050061590
MERS Phone: 1-888-679-6377
Multistate

# NOTE

LOAN NO.: 8405006159

FHA Case No.

332-4052723-703

DECEMBER 20, 2002
[Date]

355 KEATING STREET, HENDERSON, NV 89074
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of

ONE HUNDRED TWENTY SEVEN THOUSAND ONE HUNDRED EIGHT AND NO/100 X X X X X X X X X X X X

Dollars (U.S. $     127,108.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   SIX  AND ONE HALF
percent (      6.500      %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on FEBRUARY, 2003              . Any principal and interest remaining on the first day of        JANUARY, 2033
, will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
5285 EAST WILLIAMS CIRCLE, SUITE 2000, TUCSON, AZ 85711              or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $      803.41      . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Initials:

## 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000THS, percent (    4.000    %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)     _____ (Seal)
KEITH J. WILSON                  -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
                                 -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
                                 -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
                                 -Borrower                                    -Borrower

WITHOUT RECOURSE,
PAY TO THE ORDER OF Home Mortgage, INC.
Wells Fargo

FIRST MAGNUS FINANCIAL CORPORATION,
an Arizona Corporation
BY *Mary Lou Callahan*
Mary Lou Callahan, Senior Funder

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Home Mortgage, Inc.

By *Angela R. Dodson*
Angela R. Dodson
Assistant Secretary



## eValuation Services

## Drive By Property Evaluation with Photos - RUSH

### Subject Property

| | | | |
|---|---|---|---|
| Valuation Number: | 2656162 | Loan Number: | 708 - 0184152825 |
| Street Address: | 355 KEATING STREET | City: | HENDERSON |
| State: | NV | Zip Code: | 89074 |

### Real Estate Agent

| | | | |
|---|---|---|---|
| Name: | Humeston, Dan | Brokerage: | Century 21 MoneyWorld |
| Street Address: | 375 N Stephanie Suite 4 | Phone: | (702) 435-4036 |
| City, ST, Zip: | Henderson, NV, 89014 | Inspection Date: | 12/23/2009 |

### Occupancy Status

| | |
|---|---|
| Occupancy Status: | Occupied |

### Valuation Summary

| | As Is Value | *Quick Sale Value | Repaired Value |
|---|---|---|---|
| Recommended List Price: | $114,777 | $109,777 | $114,777 |
| Probable Sales Price: | $112,000 | $107,000 | $112,000 |
| Estimated Land/Lot Value: | $34,000 | | |

### Property Characteristics

| | | | |
|---|---|---|---|
| Property Condition/Type: | Fair - Single Family | Approx Age (yrs): | 22 |
| Total Rooms: | 5 | Car Port/Garage: | Attached 2 Car |
| Bedrooms: | 3 | Lot Size/Type: | 5175 Square Feet |
| Baths (Full/Half): | 2/0 | Interior Sq Ft: | 1,165 |
| Basement Type: | None | Basement Finished Rooms: | |
| HOA Fees/Mo.: | $10.00 | HOA Contact: | Green Valley South |
| HOA Name: | | HOA Phone: | 702-385-5611 |
| Currently Listed?: | No | Current List Price: | |
| Current Realtor: | | Days on Market: | |
| Repairs Description: | No | Estimated Market Rent: | $1,300 |
| Urgent Repairs Required?: | Home is currently occupied. | | |
| Positive Comments: | Henderson is a desirable area. It is comprised of a mix of single family homes, town houses and condominiums of average construction quality and good maintenance levels. Access to 95 and 215 freeways are proximate and shopping and centers of employment are reasonably close | | |
| Negative Comments: | Based on the nature of this report, it is assumed that it is in need of minor cosmetic repairs to be brought to good marketable condition. There are currently 12 active listings and 1 pending sales in the subject's property sub-division. | | |

### Market Area Condition

| | | | |
|---|---|---|---|
| Location Type: | Suburban | Property Values: | Decreasing |
| Area Price Range (Lo-Hi): | $110,000 - $285,000 | Comp Sales Last 6 Mos: | 23 |
| Avg Marketing Time: | 90 | Competitive Listings?: | Balanced w/Dema |
| New Cnstrctn. in Area?: | Yes | | |

EXHIBIT A

## Drive By Property Evaluation with Photos - RUSH

### Subject Property

| Valuation Number: | 2656162 | Loan Number: | 708 - 0184152825 |
|---|---|---|---|
| Street Address: | 355 KEATING STREET | City: | HENDERSON |
| State: | NV | Zip Code: | 89074 |

### Subject Comparison

| Prop Type | Cond | Age | RMS | BR | Bath | Garage | Lot Size | Int SF | DOM | List Price |
|---|---|---|---|---|---|---|---|---|---|---|
| Single Family | Fair | 22 | 5 | 3 | 2/0 | Attached 2 Car | 5175 SF | 1,165 | | |

### Listed Comparables

| Prop Type | Cond | Age | RMS | BR | Bath | Garage | Lot Size | Int SF | DOM | Proximity | List Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Single Family | Good | 22 | 7 | 3 | 2/0 | Attached 2 Car | 4935 SF | 1,165 | 75 | 0.02 | $109,000 |

Address: 319 Jamie Ct, Henderson, NV, 89074

Exp Adj/Cmt: Home features a nook, carpet, ceramic floors, gas fireplace and covered patio.

| Single Family | Fair | 26 | 7 | 3 | 2/0 | Attached 2 Car | 7210 SF | 1,296 | 41 | -0.09 | $107,000 |
|---|---|---|---|---|---|---|---|---|---|---|---|

Address: 2284 Heavenly View, Henderson, NV, 89014

Exp Adj/Cmt: Home features laminate counters, vinyl flooring, carpet, vinyl floors, wood burning fireplace and covered patio.

| Single Family | Good | 31 | 7 | 3 | 2/0 | Attached 2 Car | 6607 SF | 1,292 | 50 | 1.09 | $116,900 |
|---|---|---|---|---|---|---|---|---|---|---|---|

Address: 3109 Trueno Rd, Henderson, NV, 89014

Exp Adj/Cmt: Home features carpet in kitchen, carpet floors, gas fireplace, block fence and private yard

### Sold Comparables

| Prop Type | Cond | Age | RMS | BR | Bath | Garage | Lot Size | Int SF | DOM | List Price | Sale Dt | Proximity | Sale Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Single Family | Good | 19 | 7 | 3 | 2/0 | Attached 2 Car | 6300 SF | 1,165 | 36 | $110,000 | 12/02/09 | 0.02 | $111,000 |

Address: 303 Birmingham St, Henderson, NV, 89074

| | | | | | | | | | | | | Adjustment: | $0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Exp Adj/Cmt: None Home sold cash with no seller contributions. Home features a tile kitchen, carpet floors, gas fireplace, dog run and desert landscape. **Indicate Value: $111,000**

| Single Family | Good | 22 | 7 | 3 | 2/0 | Attached 2 Car | 4410 SF | 1,368 | 55 | $134,900 | 9/10/09 | 0.01 | $115,000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Address: 2562 Machado Dr, Henderson, NV, 89074

| | | | | | | | | | | | | Adjustment: | $0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Exp Adj/Cmt: None Home sold cash with no seller contributions. Home features solid counters, carpet, ceramic, vinyl floors, gas fireplace and desert landscap **Indicate Value: $115,000**

| Single Family | Excellent | 20 | 7 | 3 | 2/0 | Attached 2 Car | 6670 SF | 1,165 | 44 | $133,900 | 9/30/09 | 0.05 | $138,000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Address: 369 Cambray st, Henderson, NV, 89074

| | | | | | | | | | | | | Adjustment: | ($15,500) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Exp Adj/Cmt: seller contributions $3500 and condition Home sold FHA with seller contributions $3500. Home features a breakfast bar, tile kitchen, ceramic, carpet floors, gas fireplace and private yard. **Indicate Value: $122,500**

### Agent Addendum

Agent Comments/
Mkt Strategy:

eSignature: Humeston, Dan          Time Stamp: 12/24/2009 4:53:00 PM

This evaluation is not an appraisal. While deemed reliable, this drive-by estimate of value is limited to observations of the property exterior only, and therefore the field agent conducting this report shall not be held liable for this opinion.

"This analysis has not been performed in accordance with the Uniform Standards of Professional appraisal Practice which require valuers to act as unbiased, disinterested third parties with impartiality, objectivity and independence and without accomodation of personal interest. It is not to be construed as an appraisal and may not be used as such for any purpose."

Section 608.3 of the RELRA, 63 P.S. 455.608c.

PREMIERE
Asset Services

iC Valuation Services

## Drive By Property Evaluation with Photos - RUSH

### Subject Property

| Valuation Number: | 2656162 | Loan Number: | 708 - 0184152825 |
| Street Address: | 355 KEATING STREET | City: | HENDERSON |
| State: | NV | Zip Code: | 89074 |

### Subject Photos



Front -



Side -



Street -